UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
R.J. WILSON & ASSOCIATES, LTD.,

              Petitioner,                            **MEMORANDUM & ORDER**
                                                       Civil Action No. 08-0322
      -against-                                   (DRH) (ARL)

UNDERWRITERS AT LLOYD'S LONDON
a/k/a NEW LONDON HOUSE,

              Respondent.
----------------------------------------------------------X

**APPEARANCES:**

**Nixon Peabody LLP**
Attorneys for Petitioner
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
By:    Joseph J. Ortego, Esq.
         Aaron S. Halpern, Esq.

**Nelson Levine deLuca & Horst, LLC**
Attorneys for Respondent
120 Broadway, Suite 955
New York, New York 10271
By:    Thomas J. Bracken, Esq.

**HURLEY, Senior District Judge:**

       Petitioner R.J.. Wilson & Associates, Ltd. ("Wilson") originally commenced this action in New York State Supreme Court, County of Nassau on or about December 12, 2007 seeking to stay arbitration in connection with an arbitration demand letter dated April 3, 2007 it received from Respondent Certain Interested Underwriters at Lloyd's, London Subscribing to Binding Authority Agreement B10120 ("ULL") i/s/a Underwriters at Lloyd's London a/k/a/ New London House. The action was thereafter removed to this Court. Presently before the Court is ULL's

motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and Wilson's cross-motion to remand. For the reasons set forth below, ULL's motion is granted and Wilson's cross-motion is denied.

**Factual and Procedural Background**

In March 2001, Wilson, a Maryland corporation, entered into Binding Authority Agreement B101620 (the "BAA") with ULL, an entity organized and operating in the United Kingdom of Great Britain and Northern Ireland. Section 1 of the BAA allows Wilson to bind insurances "in accordance with the terms and conditions contained herein or agreed in writing by the Underwriters and endorsed hereon." Wilson's authority to issue policies under the BAA was limited to businesses located in Maryland, Virginia, West Virginia, and Pennsylvania..

The BAA, *inter alia*, contains an arbitration provision, which is the subject of this dispute. It provides in relevant part:

> All matters in difference between the parties arising under, out of or in connection with the Agreement, including formation and validity, and whether arising during or after the period of the agreement, shall be referred to an arbitration tribunal in the manner hereinafter set out.

BAA (Ex. A to Dkt. No. 14) at ¶ 36.1. The BAA also specifies that arbitrations are to "be conducted in accordance with and governed by the laws of England, including the Arbitration Act of 1950 - 1979 or as from time to time re-enacted or amended." *Id.* ¶ 36.5. Significantly, Appendix A to the BAA provides that with respect to all commercial general liability policies, "[a]ll risks to be written strictly in accordance with the Underwriting Manual."[1] Other pertinent

---

[1] The Cover Note issued to Wilson provides that it authorizes "the Coverholder to bind for Underwriters' account and issue certificates of insurance . . . subject to terms and conditions

2

provisions of the BAA shall be discussed as relevant.

Wilson issued a policy insuring a restaurant in Brooklyn, New York, which was to be in effect from June 29, 2001, to August 1, 2002.[2] (Dkt. No. 13 at 3.) In March, 2002, an incident occurred at the restaurant which triggered insurance coverage.[3] (*Id.*) The victim of the incident then filed suit in the Supreme Court of the State of New York, Kings County, for damages sustained during the incident. (*Id.* at 3-4.) ULL then was required, under the insurance policy issued by Wilson, to defend and indemnify the restaurant. (*Id.* at 4.) ULL settled the case, paying the victim $500,000.00 and incurring approximately $52,571.00 in legal fees and other costs in connection with the litigation and defense of the restaurant. (*Id.*)

On April 3, 2007, ULL issued an arbitration demand letter to Wilson, stating that the insurance policy issued to the restaurant was improper. (*Id.*) ULL alleges that Wilson failed to abide by the requirements set forth in the Underwriting Guidelines ("Guidelines").[4] The Guidelines set out the requirements and limitations on Wilson in regards to the issuance of insurance policies. ULL contends that the Guidelines are incorporated into the BAA. Specifically, ULL alleges Wilson failed to follow the Guidelines when it: (1) failed to obtain and keep a complete underwriting file, (2) failed to include an assault and battery exclusion in the

---

contained herein, plus Underwriting criteria and manual as agreed."
[2] Although Wilson was limited to issuing insurance policies for businesses in Maryland, Virginia, West Virginia, and Pennsylvania, it nevertheless issued an insurance policy for a business in New York. Wilson concedes that this was not proper and in violation of the agreement between Wilson and ULL. (*See* Dkt. No. 13, at 10-11.)
[3] The incident occurred when an otherwise unknown gunman shot and injured a guest at the restaurant.
[4] The "Underwriting Manual" and the "Underwriting Guidelines" apparently refer to the same document and the parties do not contend otherwise.

insurance policy at issue, (3) issued the insurance policy when the restaurant employed bouncers, and (4) provided assault and battery coverage where liquor liability coverage was provided. ULL seeks to recover the monies they expended in defending and settling the lawsuit.

On or about December, 12, 2007, Wilson filed its petition to stay arbitration in the Supreme Court for Nassau County. (Dkt. No. 13, at 4.) On January, 22, 2008, pursuant to 28 U.S.C. § 1441, ULL removed the action from Supreme Court to this Court, relying on the Federal Arbitration Act ("FAA") as federal subject matter jurisdiction.

**The Parties' Contentions**

ULL contends that the Guidelines, which restrict the manner in which Wilson can issue an insurance policy, are encompassed within the BAA, and as a result, any dispute regarding an underwriting issue is subject to the broad arbitration clause contained in the BAA. Wilson contends that the current dispute is non-arbitrable. According to Wilson, the Underwriting Guidelines do not contain any arbitration provision and do not incorporate any agreement to arbitrate. Furthermore, Wilson contends that ULL's claims are barred by the statute of limitations, warranting a stay of arbitration. It also argues that ULL's removal from state court was improper and that this Court lacks subject matter jurisdiction.

**Discussion**

**I.     This Action Is Subject To The FAA**

ULL relies upon § 203 of the FAA as conferring subject matter jurisdiction in this matter. Section 203 states in relevant part:

> An action or proceeding falling under the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards] shall be deemed to arise under the laws and treaties of the United States.

4

> The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203 (2009) (emphasis added). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") (which can be found immediately following 9 U.S.C. § 201) is enforceable through § 201 of the FAA. Section 202 defines in pertinent part the type of arbitration agreements that fall under Chapter Two of the FAA:

> An arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202 (2009).

An agreement is subject to enforcement pursuant to the Convention and the implementing provisions of the FAA if it meets the following four requirements: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir.1999).

The BAA meets each of these four requirements: it is in writing, it provides for arbitration in the United Kingdom, which is a signatory to the Convention, and it involves an international commercial relationship. The scope of this agreement is clearly not domestic. Although insurance policies can be issued by Wilson in the United States, the BAA provides that

5

arbitrations are to be held in, and conducted according to, the laws the United Kingdom.

Thus, the Court has subject-matter jurisdiction over this case.

## II.  ULL's Removal Was Proper

Wilson argues that ULL's removal of this action from Supreme Court to this Court was improper because: (1) ULL's notice of removal was filed thirty days after Wilson's petition to stay arbitration had commenced, and (2) their notice of removal failed to include all records and proceedings which is required under 28 U.S.C. § 1447(b).  Wilson seeks to have this matter remanded back to state court.  The Court will address these issues seriatim.

### A.  ULL's Notice of Removal was not Subject to a Thirty Day Time-Limit

The federal removal statute, 28 U.S.C. § 1446, requires that a defendant desiring to remove a civil action from state to federal court must file a notice of removal within thirty days after the defendant's receipt of a copy of the initial pleading.  *See* 28 U.S.C. §§ 1446(a), (b). However, due to the fact that this matter is subject to the Convention, 9 U.S.C. § 205 is applicable, not § 1446.  Section 205 states in pertinent part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205 (2009) (emphasis added).

It is not disputed that ULL removed this action thirty-seven days after Wilson filed a petition to stay arbitration by order to show cause in the Supreme Court for Nassau County.[5]  It is

---

[5] The Court notes that even if this action is governed by 28 U.S.C. § 1446, there is no evidence as to when ULL *received* the "pleading setting forth the claim for relief upon which such action

also clear that a trial had not commenced in the proceeding before the Supreme Court for Nassau County. Furthermore, neither party contests the fact this district embraces the place where the action was pending.

As stated above, this arbitration agreement falls under the Convention. As result, this action is not subject to the thirty time limit for removal under 28 U.S.C. § 1446(b). Section 205 is clearly permitted ULL to remove this action when it did.

### B. Failure to Follow the Requirements Set Forth in 28 U.S.C. § 1447(b)

Wilson states that it is "worthy of mention" that ULL's notice of removal failed to include all records and proceedings which is "required under 28 U.S.C. § 1447(b)." (Dkt. No. 13, at 4.) This reliance is misplaced. Pursuant to § 1447(b), this Court "may require the moving party to file with its clerk copies of all records and proceedings in such State court . . . ." 28 U.S.C. § 1447(b) (emphasis added). Section 1447(b) is clearly discretionary. Inasmuch as this Court did not require ULL to provide the Clerk of this Court with copies of all records and proceedings, this Court will not penalize ULL for failing to do that which it was not required to do.

### III. Analysis of Arbitration Clause

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). "First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as

---

or proceeding was based." *See* 28 U.S.C. § 1446(b). It is from *receipt* of the pleading by the defendant that the 30 days in 28 U.S.C. § 1446(b) begins to run; the date the petition was *filed* is not controlling. *See id.*

either broad or narrow." *Louis Dreyfus Negoce*, 252 F.3d at 224. (collecting cases). "Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (internal quotations omitted) (citing *Rochdale Vill., Inc. v. Pub. Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979)).

"Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotations omitted) (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir.1995)). More importantly, "a presumption of arbitrability [can] only [be] overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techn., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) (emphasis added) *Cf. Louis Dreyfus Negoce*, 252 F.3d at 225 (stating that there are no "[n]o fixed rules [that] govern the determination of an arbitration clause's scope . . . [but] very expansive language will generally suggest a broad arbitration clause").

The arbitration clause at issue, which is found in the BAA, states in relevant part: "All matters in difference between the parties, arising under, out of or in connection with the [BAA], including formation and validity, and whether arising during or after the period of the [BAA], shall be referred to an arbitration tribunal in the manner hereinafter set out." (Exhibit A to Dkt. No. 14.) Wilson contends that the arbitration clause is narrow because it is

8

applicable only to matters which fall under the BAA, which Wilson contends does not mention or incorporate the Guidelines. ULL contends that the arbitration clause is broad because it uses the broadest possible terms, and that the BAA makes numerous references to the Guidelines, thereby incorporating the Guidelines.

Section 36.1 of the BAA is a broad arbitration clause. It mandates that "[a]ll matters in difference between the parties, arising under, out of or in connection with the [BAA] . . . shall be referred to . . . arbitration." (Exhibit A to Dkt. No. 14.) (emphasis added) The term "all matters" lends to a broad reading of the arbitration clause. The arbitration clause in this case, is similar to one in which the Second Circuit has found to be "the paradigm of a broad clause." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (the arbitration clause in that case read: "[a]ny claim or controversy arising out of or relating to th[e] agreement"). The Second Circuit and the Supreme Court have found similar arbitration provisions to the one at issue to be broad. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 617 (U.S. 1985) (finding the following to be a broad arbitration clause: "[a]ll disputes, controversies or differences which may arise ... out of or in relation to the parties' contractual relationship were to be arbitrated") (internal quotations omitted); *Ross v. American Exp. Co.*, 547 F.3d 137, 139 (2d Cir. 2008) (arbitration clause that provided "[a]ny dispute, claim, or controversy ... arising out of or relating to this Agreement be settled in an arbitral, not a judicial, forum" was broad) (internal quotation omitted); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 167 (2d Cir. 2004) (finding the following to be a broad arbitration clause: "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration"); *Paramedics Electromedicina*, 369 F.3d at 649 (finding "any controversy, claim or

9

dispute between the Parties arising out of or relating in any way to this Agreement which the Parties are unable to resolve by mutual negotiation . . . either Party shall be entitled to have such controversy, claim or dispute finally settled by arbitration" was a broad arbitration clause) (internal quotations omitted); *McCann v. Royal Group, Inc.*, 77 Fed. Appx. 552, 554 (2d Cir. 2003) (Summary Order) (finding the following to be a broad arbitration clause "[a]ny controversy or claim arising out of or relating to this Agreement, the breach thereof or the coverage of this arbitration provision shall be settled by arbitration"); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) (finding the following to be a broad arbitration clause "[a]ny dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able to settle [shall be arbitrated]"); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) ( describing arbitration clause requiring arbitration of "[a]ny dispute, controversy or claim arising under or in connection with this Agreement" as the "prototypical broad arbitration provision").

Despite the broad language in the arbitration clause, and the explicit reference to "all matters in difference between the parties," Wilson contends that this matter falls outside the scope of this language. Specifically, Wilson contends that the BAA "does not include the [Guidelines] which is a completely separate agreement . . . [and no reference is made] in the arbitration provision contained in the [BAA] to the [Guidelines]." (Dkt. No. 13, at 7.) This reliance is misplaced.

The broad arbitration provision in the BAA does not exclude the current matter from arbitration. In fact, the BAA incorporates by reference the underwriting guidelines. As noted earlier, the BAA, in Appendix A requires that with respect to all commercial general liability

10

policies, "[a]ll risks to be written strictly in accordance with the Underwriting Manual." There are numerous other references to the underwriting guidelines and requirements in the BAA. For example, the BAA references the Guidelines by using the following terms: "Underwriting criteria," "appropriate Wordings/Clauses as agreed by Underwriter," "Underwriting Manual," "Underwriting Guideline," and "Underwriters." (Dkt. No. 14, at 8-9.) The Underwriting Guidelines' lack of express incorporation of the BAA's arbitration provision does not preclude the applicability of the arbitration clause to the current dispute. *See Simply Fit of North Am., Inc. v. Poyner*, 579 F. Supp. 2d 371, 377 (E.D.N.Y. 2008).

The FAA "expresses a liberal federal policy favoring arbitration agreements and that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Louis Dreyfus Negoce*, 252 F.3d at 223 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *see also ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) (stating that "doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability") (quotation omitted); *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 248 (2d Cir. 1991) (stating that "federal arbitration policy requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (internal quotation omitted) (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25). Also, the federal policy in favor of arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 615 (1985). A broad arbitration clause such as the one in the BAA "creates a presumption of arbitrability, which is overcome only if it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute." *CPR (USA) Inc. v. Spray*, 187 F.3d 245, 254 (2d Cir. 1999) (internal quotations omitted). No such positive assurance exists in this case.

The Court finds that this dispute is subject to arbitration pursuant to the agreed upon measures in the BAA.

### III. Timeliness of the Demand

Wilson also maintains that a stay of arbitration is warranted because all of ULL's claims are barred by the six year statute of limitations pursuant to the Limitation Act of 1980 of English Law as the policy in question was issued on June 29, 2001 and the underlying incident occurred on March 17, 2002. Wilson argues that under the English law, which is applicable pursuant to the BAA's choice of law provision, the Limitations Acts applies to arbitral proceedings and courts may decide issues relating to statute of limitations defense.

Under the law of this Circuit, broad arbitration clauses, like the one in this case, have been held to indicate the parties' intention to submit all questions of arbitrability, including timeliness, to arbitration. *Pellegrino v. Auerbach*, 2006 WL 565643, *4 (S.D.N.Y. Mar. 7, 2006) (citing *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003); *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1199-1200 (2d Cir. 1996); *HD Brous & Co. v. Mrzyglocki*, 2004 WL 376555, *9-10 (S.D.N.Y. Feb. 26, 2004); *Unis Group, Inc. v. Compagnie Financiere de CIC et de l'Union Europeenne*, 2001 WL 487427, *1 (S.D.N.Y. May 7, 2001)).

*Coleman & Coleman Securities, Inc., v. The Giaquinto Family Trust*, 2000 WL 1683450 (S.D.N.Y. Nov. 9, 2000), relied upon by Wilson, does not mandate a different result in this case. In *Coleman*, the Court found the issue of timeliness was one for the court because the parties had selected the FAA and New York law to govern their arbitration and  New York law expressly

limits the power of arbitrators to hear certain threshhold questions including timeliness. *See id.* at *4. Here, the arbitration clause provides that the arbitration shall be conducted pursuant to the laws of England. Wilson, however, has not provided this Court with any authority that under English law the question of timeliness is reserved for the courts. In fact, Wilson tacitly acknowledges otherwise by stating that "English Law expressly provides that the Limitations Act under English Law shall apply to all arbitral proceedings, and that the courts *may* decide issues relating to statute of limitations defense." (Dkt No.13 at 13 (emphasis added).) In the absence of authority for the proposition that English law limits the power of arbitrators so as to exclude from their purview questions of timeliness, a stay of arbitration is not warranted.

**Conclusion**

For the reason set forth above, ULL's motion to compel arbitration pursuant to 9 U.S.C. § 1 et seq. is granted and Wilson's motion to remand is denied. The Clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
September 21, 2009

/s/
Denis R. Hurley
Senior District Judge